UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TARZANA PROVIDENCE HEALTH SYSTEM**, *et al.*,<br><br>                Plaintiffs,<br><br>        v.<br><br>**XAVIER BECERRA**,<br><br>                Defendant. | Case No. 1:22-cv-01509 (TNM) |

**MEMORANDUM OPINION**

"Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Isl. Ark. & La. R.R. Co. v. United States*, 254 U.S. 141, 143 (1920). This case exemplifies that principle. Plaintiffs, a bevy of hospitals that object to a Medicare regulation, did not comply with the conditions Congress placed on judicial review. So their case must be dismissed.

**I.**

Plaintiffs are some 33 hospitals from across the country that participate in Medicare and Medicaid. Amend. Compl. (Compl.) at 1–6, ECF No. 12. They allege that the Government underpaid them based on an erroneous reading of the Medicare Act. *Id*. ¶ 32.

Through Medicare, the Government offers health insurance to the elderly and those with disabilities. 42 U.S.C. § 426(a)–(b). When hospitals care for such patients, Medicare helps foot the bill. *Id*. § 1395d(a). But unlike the Good Samaritan, Medicare does not reimburse a hospital for all it spends on a patient. Instead, it pays a fixed amount per patient based on the typical cost of efficient care. *Id*. § 1395ww(d)(1)–(5); 42 C.F.R. § 412.2. The hospital eats the rest.

This limitation stems runaway costs for the Government. But it also discourages hospitals from taking on Medicare patients who may be more expensive to treat. These patients are often low-income. *See Becerra v. Empire Health Found.*, 597 U.S. 424, 429 (2021). Loath to shutter hospitals in poor areas, the Government ups its Medicare payments when a hospital "serves a . . . disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Simply put, "[t]he Medicare program reimburses hospitals at higher-than-usual rates when they serve a higher-than-usual percentage of low-income patients." *Empire Health*, 597 U.S. at 428.

But which hospitals count? The Government uses a complex formula to decide. That formula is called the Disproportionate Patient Percentage (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(vi).

Think of the DPP as asking hospitals two questions, which are roughly as follows. First, a question focused on Medicare patients: What percentage of the hospital's Medicare patients are low income? *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). Then, a holistic question: What percentage of the hospital's entire patient population is low income but *not* Medicare-eligible? *See id.* § 1395ww(d)(5)(F)(vi)(II). Add those two percentages together and you have, roughly, the hospital's DPP.

This is how the Medicare statute phrases the first percentage:

> The fraction (expressed as a percentage), the numerator of which is the number of [the] hospital's patient days . . . which were made up of patients who . . . were entitled to benefits under [Medicare] and were entitled to supplementary security income [(SSI)] benefits . . . , and the denominator of which is the number of [the] hospital's patient days which were made up of patients who . . . were entitled to benefits under Medicare.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). This percentage is known as the "SSI fraction." Expressed as a formula, it looks something like $SSI\ fraction = 100 \times \frac{Patient\ Days_{Medicare\ AND\ SSI\ Eligible}}{Patient\ Days_{Medicare\ Eligible}}$.

2

And this is how the statute phrases the second percentage:

> The fraction (expressed as a percentage), the numerator of which is the number of [the] hospital's patient days . . . which consist of patients who . . . were eligible for medical assistance under [Medicaid], but who were not entitled to benefits under [Medicare], and the denominator of which is the total number of the hospital's patient days.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). This percentage is known as the "Medicaid fraction." As a formula, it looks like $Medicaid\ fraction = 100 \text{ x} \frac{Patient\ Days_{Medicaid\ BUT\ NOT\ Medicare\ Eligible}}{Patient\ Days}$.

Once the Government knows a hospital's DPP, it plugs it into a statutory payment schedule to determine the reimbursement rate. 42 U.S.C. § 1395ww(d)(5)(F)(vii)-(xiv). As is clear, the DPP is vital to determining the extent of a hospital's reimbursement. The larger the DPP, the larger the payments. *Empire Health*, 597 U.S. at 431.

Again, the DPP is based on how many patients are "entitled to" certain benefits. So the Government has issued regulations to clarify what "entitled to" means. *Empire Health*, 597 U.S. at 428. Since 2004, the Government has claimed that a patient is "entitled to" Medicare benefits if he meets all the Medicare eligibility requirements, even if Medicare would not actually pay for his hospital stay. *Id.* at 432. That might happen, for instance, if he has already spent more than 90 days in a hospital during that year. *Id.*

Defining "entitled to" this broadly—by not requiring actual receipt of benefits—drives down both the SSI fraction and the Medicaid fraction. Because it adds patient days to both the numerator and denominator of the SSI fraction, it "generally (though not always)" pushes the SSI fraction down. *Empire Health*, 597 U.S. at 433. And because it *subtracts* patient days from the numerator of the Medicaid fraction, it *always* drives that fraction down. The result is a definition that generally minimizes hospitals' DPPs.

But the Government takes the opposite approach for SSI benefits. To be "entitled to supplementary security benefits," a patient must have actually received an SSI payment for the

3

month of his hospital stay.  75 Fed. Reg. 50,042, 50,280–281 (Aug. 16, 2010).  This contrasts with the Government's treatment of Medicare.  By cabining the number of patients who are entitled to SSI benefits, the Government drives down the numerator of the SSI fraction, again minimizing hospitals' total DDPs.

Every year, hospitals "submit cost reports to contractors . . . known as fiscal intermediaries."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 150 (2013).  "[T]he intermediary issues a Notice of Program Reimbursement (NPR) informing the [hospital] how much [Medicare] will pa[y] for the year."  *Id.*  A hospital that is dissatisfied with its reimbursement may "request [] a hearing before the [Provider Reimbursement Review Board (PRRB)] within 180 days of receiving the NPR."  *Id.* (citing 42 U.S.C. § 1395oo(a)(3)).

Plaintiffs got such an NPR.  But they were dissatisfied.  They objected to the combination of the Government's broad reading of Medicare eligibility and its narrow reading of SSI eligibility.  Compl. ¶ 32.  They appealed their NPR to the PRRB and sought Expedited Judicial Review (EJR).  *Id*. ¶ 3.  Without waiting for the PRRB to render a decision, they came here and sued, raising the same objections.  *See generally* Compl.

## II.

The Government moves to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

Under either rule, the Court assumes the truth of the allegations in the Complaint.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).  The Court then asks whether the facts, as alleged, give rise to a plausible inference that the Court has jurisdiction over the case (for Rule 12(b)(1)), *see Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 338 (2016), or a "reasonable inference that the defendant is liable for the misconduct alleged" (for Rule 12(b)(6)), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because jurisdictional challenges implicate the Court's ability to hear the case, the burden for Rule 12(b)(1) motions is on Plaintiffs, but the Court is not limited to allegations contained in the Complaint. *Johnson v. Becerra*, 668 F. Supp. 3d 14, 19 (D.D.C. 2023), *aff'd*, 2024 WL 3732956 (D.C. Cir. Aug. 9, 2024). But "jurisdiction" is a "word of many, too many, meanings," *Steel Co. v Citizens for a Better Environ.,* 523 U.S. 83, 90 (1998), so the Court must carefully parse defects that deny the Court power to hear a case from defects that simply doom Plaintiffs' Complaint. The later category are matters for Rule 12(b)(6), not (12)(b)(1).

### III.

This case begins, and can end, with exhaustion.

The Government claims that Plaintiffs' failure to exhaust statutorily prescribed administrative procedures strips the Court of jurisdiction, meaning dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1). Def.'s Mot. Dismiss at 8–11.

But Rule 12(b)(1) is not Plaintiffs' Waterloo. Jurisdiction exists over Plaintiffs' claims, so the Court reviews them for failure to state a claim under Rule 12(b)(6). See why: Plaintiffs' Complaint arises under the Medicare Act, and thus is governed by that act's judicial review provisions, 42 U.S.C. § 405(g) and (h). *See* 42 U.S.C. § 1395ii (adopting the Social Security Act's judicial review provisions for the Medicare Act).

Section 405(h) is a cruel mistress. It strips courts of all jurisdiction to review Department of Health and Human Services Medicare orders "except as [t]herein provided." 42 U.S.C. § 405(h). Thus, for a claim to be reviewable, a plaintiff must precisely follow the Act's judicial review requirements, found in § 405(g). Most critical is that courts may review only "*final*

decision[s]" of the Secretary." 42 U.S.C. § 405(g) (emphasis added); *see Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018).

That finality requirement comprises two essential principles: presentment and exhaustion. The presentment requirement means that parties seeking judicial review must first present their claims to the Secretary. *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976). The exhaustion requirement, by contrast, means that those parties must also complete "the full set of internal-review procedures provided by the Secretary" before resorting to federal court. *Id*. at 330. Presentment, in essence, requires a plaintiff to start in the agency; exhaustion requires a plaintiff to let it run its course.

For jurisdictional purposes, the two requirements differ in a key way. Presentment is a "nonwaivable jurisdictional element." *Id.* at 330. So the failure for a plaintiff to present his case to the agency means a court lacks subject matter jurisdiction over that case.

But exhaustion is "waivable." *Id.* So exhaustion is better understood as a prudential threshold issue subject to a couple of judicially created waivers. *See id.* at 330-331; *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) (describing the narrow circumstances where waiver of the § 405(g) exhaustion requirement is appropriate). In short: a party's failure to *present* under § 405(g) strips a court of subject matter jurisdiction and must be challenged under 12(b)(1), but a party's failure to *exhaust* is not strictly jurisdictional and must be challenged under 12(b)(6). *Azar*, 895 F.3d at 828.

The parties do not dispute that Plaintiffs appeared before the PRRB.[1] Mot. Dismiss at 9; Compl. ¶ 33. The central clash between the parties is whether Plaintiffs' failure to exhaust

---

[1] The Government suggests that the presentment element is unsatisfied as to the interpretation of "entitled to supplementary security income benefits," because Plaintiffs' challenge to this definition "was not squarely presented to the Board." Mot. Dismiss at 10, n.4. But the

6

precludes judicial review, and, if not, whether their claims pack any punches. Mot. Dismiss at 8, 11–12; *see generally* Compl. So the Court reviews the disagreement under the rubric of 12(b)(6).

Moving to that review: Plaintiffs fail to state a claim on which relief can be granted because they fail the exhaustion requirement. They openly admit that they have not exhausted their administrative remedies. Compl. ¶ 3 ("To the best of Plaintiffs' knowledge, no requests for EJR have thus far been granted, nor has the PRRB rendered its decision(s) on any such request."). Because the PRRB has not decided their administrative appeal, their remedies are not exhausted. *Accord Nat'l Ass'n for Home Care & Hospice v. Becerra*, --- F. Supp. 3d ---, 2024 WL 1833881, at *8–9 (D.D.C. 2024). And no waiver can rescue the Plaintiffs. The Government has not excused the requirement of exhaustion in this case. *Compare Weinberger v. Salfi*, 422 U.S. 749, 766–67 (1975). Nor is this the rare situation in which Plaintiffs are raising "constitutional challenge[s] [that are] collateral to [their] claim[s] of entitlement" where they "stand[] to suffer irreparable harm if forced to exhaust [their] administrative remedies." *Ryan*, 12 F.3d at 248. Because their remedies are not exhausted, Plaintiffs are not entitled to judicial review. *Eldridge*, 424 U.S. at 328.

Resisting this conclusion, Plaintiffs argue that "awaiting the Board's determination on the straightforward EJR request" would be "a waste of time." Pls.' Mem. Opp'n Mot. Dismiss at 10. Maybe so, maybe not. That is not for the Court to decide. *Congress* set the terms for judicial review of orders like this one. And absent some argument that those terms are unconstitutional—an argument Plaintiffs have not made—the Court is bound to follow them.

---

presentment element does not require the Court to split claims in this manner; it is enough that Plaintiffs appeared before the Board and expressed their dissatisfaction with their ultimate reimbursement. *Eldridge*, 424 U.S. at 329–30.

Similarly, Plaintiffs' denigration of the exhaustion requirement as "a [t]echnicality" misses the point. *Id.* at 12. The exhaustion requirement may be a technicality in that it is a small "detail meaningful only to a specialist." *Technicality*, Merriam-Webster's Collegiate Dictionary (10th ed. 1996). But federal jurisdiction is a set of technicalities of enormous significance. These technicalities are the keys that unlock the courthouse door. *See Steel Co.*, 523 U.S. at 94–95. Plaintiffs therefore cannot evade the terms of the statute by simply arguing that the procedures Congress specified are just not all that important. *Accord Ryan*, 12 F.3d at 248.

Plaintiffs' Complaint is therefore barred. They never exhausted their administrative remedies, and a waiver is not appropriate here. So the Complaint must be dismissed under Rule 12(b)(6).

### IV.

In any event, Plaintiffs' substantive arguments fare no better. Plaintiffs identified two main errors in the NPRs. They contend that the agency was wrong to define *Medicare entitlement* as *not* requiring actual receipt of benefits. Compl. ¶ 37. At the same time, they argue that the agency was wrong to define *SSI entitlement* as requiring actual receipt of benefits. *Id.* ¶ 38. For those reasons, they ask the Court to enjoin the Secretary from applying either definition. *Id.* ¶ 39(a). Neither argument succeeds.

First, the Supreme Court rejected Plaintiffs' Medicare-entitlement argument in *Empire Health*. In that case, the Court concluded that "HHS's understanding of the Medicare fraction," in which "individuals entitled to Medicare Part A benefits are all those qualifying for the program, regardless of whether they are receiving Medicare payments" "best implements the

[Medicare] statute[]." *Empire Health*, 597 U.S. at 428, 445 (cleaned up).  Under that decision, Plaintiff's challenge to the definition of Medicare entitlement founders.

Next, Plaintiffs' challenge to the SSI-entitlement definition is foreclosed by *Advocate Christ Medical Center v. Becerra*, 80 F.4th 346 (D.C. Cir. 2023).  In that case, another set of hospitals objected to the Government's interpretation of "entitled to supplemental security income benefits" as requiring actual receipt of SSI payments.  *Id*. at 352.  But the D.C. Circuit declared, flatly, "[t]he hospitals are mistaken." *Id*.  It therefore "agree[d] that the Secretary offered the correct interpretation" of the statute, and that entitlement to SSI benefits required actual receipt of SSI payments.  *Id*. at 352–54.  Under *this* decision, Plaintiffs' challenge to the SSI-entitlement regulation *also* fails.

Plaintiffs do not contest any of this.  Opp'n at 14–15.  The Government argued in its dismissal motion that *Empire Health* and *Advocate Christ Medical Center* foreclosed Plaintiffs' challenges.  Mot. at 11–12, ECF No. 17.  In response, Plaintiffs simply denied challenging the definition of Medicare entitlement at all.  Opp'n at 14; *but see* Compl. ¶ 37.  They did not assert, much less argue, that *Empire Health* would not doom such a challenge.  The Court takes this disavowal as an abandonment of Plaintiffs' Medicare-entitlement claim.  But it also takes Plaintiffs' failure to respond on this point as a concession that *Empire Health* forecloses any claim that the Medicare-entitlement definition was unlawful.  These independently sufficient reasons both require rejection of Plaintiffs' Medicare-entitlement claim.  *See* Compl. ¶ 37.

Nor can Plaintiffs prevail on their SSI-entitlement claim.  Here, they do admit to having made such a claim.  But again, they do not respond to the Government's argument that *Advocate Christ Medical Center* forecloses it.  Instead, they insinuate the Court should simply ignore that decision.  Opp'n at 14.  Since that decision was "subject to a potential filing by Plaintiffs for a

9

petition for [a] writ of certiorari" (which has since been filed and granted), they say applying it here "is premature." *Id*.  But that is not how precedent works.

The Circuit's opinion in *Advocate Christ Medical Center* bound courts in this district from the moment it was issued.  *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).  And it will continue to bind district courts until it is either vacated or overruled.  *Id*.  Neither has happened yet.  So the Court has no liberty to ignore the Circuit's command.

Even looking past exhaustion, the meat of Plaintiffs' argument is flavorless.  Their Medicare-fraction claim is abandoned and, if not, it fails.  Their SSI-fraction claim fails and, if not, it is forfeited.  So the Court will dismiss their Complaint on these grounds too.

**V.**

Plaintiffs contend that they *almost* exhausted their administrative remedies.  Almost may count in horseshoes and hand grenades, but not federal judicial review.  And their claims founder on controlling precedent in any event.  So the Court will grant the Government's Motion to Dismiss.[2]  A separate Order will issue today.

Dated: August 30, 2024                                          TREVOR N. McFADDEN, U.S.D.J.

---

[2] Plaintiffs ask that the Court remand the case to the agency with reinstatement.  Opp'n at 12–14.  The Court declines the invitation.  Once a court determines that plaintiffs have failed to allege a viable cause of action—whether under Rule 12(b)(1) or 12(b)(6)—the only appropriate course is to dismiss the case.  *See, e.g.*, Fed. R. Civ. P. 12(h)(3).